**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| G&S HOLDINGS, LLC, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) No. 3:09-CV-00592 JD |
| CONTINENTAL CASUALTY | ) |
| CO. and HYLANT GROUP, INC., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Now before the Court are the Motion to Remand [DE 9] filed by Plaintiffs on January 5,

2010, the Motion to Dismiss [DE 11] filed by Defendant Continental Casualty Company on

January 6, 2010, and the Motion to Dismiss [DE 18] filed by Defendant Hylant Group, Inc. on

February 5, 2010.  For the following reasons, Plaintiffs' Motion to Remand [DE 9] is DENIED,

and Defendants' Motions to Dismiss [DE 11; DE 18] are GRANTED.

**I. Background**

On November 29, 2007, there was an explosion at a Manchester, Georgia metal-

processing plant owned by G&S Metal Consultants, Inc. ("GSMC").  GSMC made a claim under

its insurance policy, which was issued by Continental Casualty Company ("Continental").  There

is no dispute that insurance coverage existed, or that the explosion was an incident covered by

the policy.  [DE 2 at ¶ 13; DE 17 at 5].

Continental made some payments to GSMC on its claim for the Manchester explosion.

[DE 1 at ¶ 19].  Plaintiffs allege that these payments were "far short of the damages suffered",

and that Continental therefore breached the terms of the policy.  On this ground, GSMC filed suit

against Continental.  This separate suit is currently pending in the Northern District of Indiana under case number 3:09-CV-493.

GSMC, now in bankruptcy, is not a party to the suit in this case.  Plaintiffs in this suit are G&S Holdings, LLC, G&S Metal Trading, LLC, Aluminum Sizing, Inc., R. Scott Galley, II, and Cynthia Galley.  G&S Holdings, G&S Metal Trading, and Aluminum Sizing are businesses that were affiliated with GSMC [DE 1 at ¶ 26].  These businesses are also listed as additional named insureds in the policy issued by Continental.  [DE 19-1 at 21].  The Galleys were owners and operators of GSMC.  [DE 1 at ¶ 44].  Importantly, no Plaintiff in this case has made a claim under the policy.  [DE 2 at 5 n.2].

Instead, Plaintiffs contend that they suffered financial injuries as a result of Continental's alleged failure to pay GSMC's claim in full.  Those Plaintiffs listed in the policy as additional named insureds claim that their status as such gives them standing to sue Continental for its alleged underpayment to GSMC, arguing that "[i]f the claim owed to [GSMC] had been paid, the additional insureds would not have suffered injury."  [DE 17 at 5].  Likewise, the Galleys claim that they are third-party beneficiaries under the policy, and therefore have standing to sue.  *Id.* at 6.

Plaintiffs also join their former insurance broker, Hylant Group, Inc. ("Hylant"), as a defendant.  Plaintiffs allege that they suffered injury as a result of their reliance on Hylant in obtaining the insurance policy at issue.  [DE 17 at 6].

Plaintiffs' complaint lists seven counts: (1) a breach of contract claim against Continental; (2) a promissory estoppel claim against Continental and Hylant; (3) a bad faith claims handling claim against Continental; (4) a negligent claims handling claim against

Continental; (5) a tortious interference with contract claim against Continental; (6) a negligent infliction of emotional distress claim against Continental; and (7) a breach of fiduciary duties claim against Continental and Hylant. [DE 1].

## II. Motion to Remand

Plaintiffs' Motion to Remand claims that the U.S. District Court does not have original jurisdiction to hear this case. [DE 9 at ¶¶ 4-5].

Under 28 U.S.C. § 1332(a)(1), federal district courts have original jurisdiction to hear civil actions between citizens of different states when the amount in controversy exceeds $75,000. The requirement that suits be between citizens of different states generally requires complete diversity of citizenship between all plaintiffs and all defendants. *See*, *e.g.*, *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). As a rule,

> in deciding whether the required diversity is present, the court will confine inquiry to the citizenship of the named parties. If there is the required complete diversity of citizenship among them, the question whether the suit can be maintained will depend on whether the named parties are the real parties in interest and whether any indispensable party has been left out.

*F. & H.R. Farman-Farmaian Consulting Eng'rs Firm v. Harza Eng'g Co.*, 882 F.2d 281, 284 (7th Cir. 1989). A corporation is deemed a citizen of both the state of its incorporation and the state in which it has its principle place of business. 28 U.S.C. § 1332(c)(1). The U.S. Supreme Court has defined "principle place of business" as "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities[,]" which "will typically be found at a corporation's headquarters." *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1186 (2010); *accord Wisconsin Knife Works v. Nat'l Metal Crafters*, 781 F.2d 1280, 1282 (7th Cir. 1986).

In addition to suits filed in federal court, 28 U.S.C. § 1441, "authorizes the removal of

civil actions from state court to federal court when the action initiated in state court is one that could have been brought, originally, in a federal district court." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 83 (2005). When removing to federal court based on the diversity of the parties, removal requires that no defendant be "a citizen of the State in which [the] action [was] brought." § 1441(b).[1]

In this case, the parties do not dispute that the amount in controversy exceeds $75,000. There is also no dispute that Plaintiffs are citizens of Indiana. [DE 1, ¶¶ 1-5; DE 15-2]. It is further uncontested that Continental is a citizen of Illinois, where it is incorporated and has its principle place of business. [DE 2 at ¶ 3.]; *see also* 28 U.S.C. § 1332(c)(1) (establishing corporate citizenship as such). The only dispute concerns the citizenship of Hylant Group, Inc.

Defendants contend that Hylant is a citizen of Ohio. [DE 15-2 at ¶ 2; DE 2 ¶ 4]. In support of this claim, they cite the declaration of William Pridgeon, Treasurer of Hylant Group, Inc., who reports that Hylant is incorporated under the laws of Ohio and has its headquarters in Toledo, Ohio, from which it "provides managerial and administrative oversight of Hylant Group's other offices," including its office in Fort Wayne, Indiana. [DE 15-3]. Defendants therefore conclude that Hylant Group, Inc. is a citizen of Ohio.

Plaintiffs, however, contend that Hylant Group, Inc. is an assumed name for Hylant of Indiana, LLC, which they claim is an Indiana citizen. [DE 9 at ¶ 3]. Plaintiffs support this claim with a purported record from an Indiana Secretary of State website listing "Hylant Group, Inc." as an assumed name for Hylant of Indiana, LLC. [DE 9-2]. Plaintiffs thus assert that the parties

---

[1] The Court also notes that Hylant did consent to removal in writing, as required by 28 U.S.C. § 1446(b). [DE 2-5]. *See Gossmeyer v. McDonald*, 128 F.3d 481, 489 (7th Cir. 1997) (noting the requirement of written consent).

are not completely diverse, and therefore that the U.S. District Court lacks original jurisdiction to hear this case.

For two reasons, Plaintiffs' argument is without merit. First, generally, "in deciding whether the required diversity is present, the court will confine inquiry to the citizenship of the named parties." *F. & H.R. Farman-Farmaian*, 882 F.2d at 284; accord *Cont'l Info. Servs., Inc. v. Am. Salvage Pool Assoc.*, 230 F.3d 342, 346 (7th Cir. 2000). In this case, Plaintiffs' complaint names Hylant Group, Inc.–not Hylant of Indiana, LLC–as a defendant.[2] [DE 1]. Likewise, the summons was issued to Hylant Group, Inc. [DE 15-4]. As the Court held in *Lincoln Property Co. v. Roche*, 546 U.S. 81 (2005), this Court has "no warrant . . . to inquire whether some other person might have been joined as an additional or substitute defendant[,]" because "[i]t is not incumbent on the named defendants to negate the existence of a potential defendant whose presence in the action would destroy diversity." *Id.* at 93, 84.

Second, uncontroverted submissions to the Court establish that Hylant Group, Inc. is the real party in interest. The affidavit of William Pridgeon explains that from Ohio, Hylant Group, Inc. oversees the operations and pays the employees of Hylant Group's Fort Wayne office. [DE 15-3]. Hylant Group, Inc. also holds all insurance licenses required for sales in Indiana. *Id.* As the Court pointed out in *Lincoln Property*, "Congress surely has not directed that a corporation, for diversity-of-citizenship purposes, shall be deemed to have acquired the

---

[2] The Court also notes that Plaintiffs' submissions to the Court are insufficient to establish that Hylant of Indiana, LLC is a citizen of Indiana, since Plaintiffs' filings do not establish the citizenships of that company's general and limited partners. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990) (holding that a partnership has the citizenship(s) of each of its general and limited partners); *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998) (holding that a limited liability company should be treated like a partnership for diversity jurisdiction purposes).

citizenship of all or any of its affiliates." 546 U.S. at 94.

Because complete diversity between all Plaintiffs and all Defendants exists, and because Hylant Group, Inc. is the real party in interest, the Court has original jurisdiction to hear this case. Accordingly, Plaintiff's Motion to Remand [DE 9] is hereby DENIED.

### III. Motions to Dismiss

**A. Choice of Law**

Before addressing the merits of Defendants' motions to dismiss [DE 11; DE 18], the Court must first determine the law to be applied to this case.

"When a federal court hears a case in diversity, it does not necessarily apply the substantive law of the forum state; rather, it applies the choice-of-law rules of the forum state to determine which state's substantive law applies." *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)); *accord Nautilus Ins. Co. v. Reuter*, 537 F.3d 733, 737 (7th Cir. 2008). Indiana is the forum state in this matter. As a result, the Court will apply Indiana choice-of-law rules to determine what state's substantive law governs this dispute.

Indiana courts honor reasonable choice-of-law stipulations by parties to contract cases. *Auto-Owners*, 580 F.3d at 546-47 (honoring them "regardless of whether such stipulations were made formally or informally, in writing or orally"); *see also Santa's Best Craft, LLC v. St. Paul Fire and Marine Ins. Co.*, 611 F.3d 339, 345 (7th Cir. 2010) (applying the law of the forum state because no party raised a choice of law issue) (citing *Casio, Inc. v. S.M. & R. Co.*, 755 F.2d 528, 531 (7th Cir. 1985); *Lloyd v. Loeffler*, 694 F.2d 489, 495 (7th Cir. 1982) (same)).

In this case, however, no such agreement exists. In its motion to dismiss, Continental

cites both Indiana and Georgia law. [DE 12]. Hylant cites Indiana law in its motion to dismiss.[3]

[DE 19]. In their response to Continental's motion, Plaintiffs contend that Indiana law applies.

[DE 17 at 2-3]. In reply, Continental cites Indiana law, but asserts that interpretation of the

policy "could potentially be governed by either the substantive law of Indiana or Georgia," and

accordingly reserves its "right to raise a choice of law issue at the appropriate time." [DE 20 at 4

n.1]. Additionally, the Court notes that the insurance policy at issue does not include a provision

specifying the state law that governs its interpretation. *See Nat'l Union Fire Ins. Co. v. Standard*

*Fusee Corp.*, No. 49S04-1006-CV-318, 2010 WL 5392678, at *1 (Ind. Dec. 29, 2010)

(conducting a choice-of-law analysis in light of the absence of such a policy provision). Because

the parties have raised and briefed the choice-of-law issue but have not agreed on a resolution,

the Court will assume that a conflict between Indiana and Georgia state law exists. *See Am.*

*Emp'rs Ins. Co. v. Coachmen Indus., Inc.*, 838 N.E.2d 1172, 1176 (Ind. Ct. App. 2005)

(assuming a conflict because the parties briefed the issue).

In resolving a choice-of-law issue in a contract action, Indiana law directs courts to apply

"the law of the forum with the most intimate contacts to the facts." *Nautilus Ins. Co. v. Reuter*,

537 F.3d 733, 737 (7th Cir. 2008) (citing *Emp'rs Ins. of Wausau v. Recticel Foam Corp.*, 716

N.E.2d 1015, 1024 (Ind. Ct. App. 1999)). This approach, embodied in the Restatement (Second)

of Conflict of Laws, considers the following factors: "(a) the place of contracting; (b) the place

of contract negotiation; (c) the place of performance; (d) the location of the subject matter of the

_____

[3] See [DE 19 at 5 n.2] (quoting *Massey v. Merrill Lynch & Co., Inc.*, 464 F.3d 642, 645
(7th Cir. 2006) ("We look to the state law of Conseco's incorporation (Indiana, in this case) to
determine whether the plaintiffs' claims are derivative or direct.") (citing *Boland v. Engle*, 113
F.3d 706, 715 (7th Cir. 1997))).

contract; and (e) the domicile, residence, nationality, place of incorporation, and place of

business of the parties." *Id.* (citing *Wausau*, 716 N.E.2d at 1024; Restatement (Second) of

Conflict of Laws § 188 (1971)).

When interpreting an insurance contract, Indiana courts further apply Restatement § 193,

which states that:

> The validity of a contract of fire, surety or casualty insurance and the rights created
> thereby are determined by the local law of the state which the parties understood was
> to be the principal location of the insured risk during the term of the policy, unless
> with respect to the particular issue, some other state has a more significant
> relationship . . . to the transaction and the parties, in which event the local law of the
> other state will be applied.

*Coachmen*, 838 N.E.2d at 1177.  Furthermore, commentary to Restatement § 193 directs that

"[t]he location of the insured risk will be given greater weight than any other single contact in

determining the state of the applicable law provided that the risk can be located, at least

principally, in a single state."  Restatement § 193 cmt. b.  That comment further clarifies that

"[t]he importance of the risk's principal location will [] vary somewhat from case to case.  It

enjoys greatest significance when an immovable is involved, such as when the risk insured

against is damage by fire to a particular building."  *Id.*  Indeed, the Indiana Supreme Court "has

recognized that '[a]n insurance policy is governed by the law of the principal location of the

insured risk during the term of the policy.'"  *Nat'l Union*, 2010 WL 5392678, at *3 (quoting

*Dunn v. Meridian Mut. Ins. Co.*, 836 N.E.2d 249, 251 (Ind. 2005)).  Additionally, that Court has

explicitly adopted the uniform-contract-interpretation approach in the insurance context.  *Id.* at

*2.  This Court must therefore apply the law of a single state in interpreting an insurance policy,

even if the policy covers multiple risks in multiple states.

These relevant factors indicate that Indiana law should govern the interpretation of the

insurance policy at issue in this case. With regard to the factors enumerated in Restatement § 188: (a) the place of contracting was Indiana; (b) the place of contract negotiation was Indiana; (c) the place of performance was Indiana because Plaintiffs and GSMC, which are Indiana citizens, paid premiums and GSMC likely made its claim under the policy in Indiana; (d) the subject matter of the contract was located in Indiana and Georgia; and (e) the parties are residents of, incorporated in, or have their principle places of business in Indiana, Illinois, and Ohio, as detailed previously. [DE 17 at 3]; Part I., *supra*. The principle location of the insured risk, which the Court is to consider heavily, further weighs in favor of applying Indiana law. The policy at issue covered a total of ten buildings. [DE 19-1 at 13-19]. Nine of these buildings were located in Indiana; one was located in Georgia. *Id.*; *see also Coachmen*, 838 N.E.2d at 1181 (noting that the principal location of insured risk in *Travelers Indem. Co. v. Summit Corp. Of Am.*, 715 N.E.2d 926 (Ind. Ct. App. 1999); *Wausau*, 716 N.E.2d 1015; and *Hartford Acc. & Indem. Co. v. Dana Corp.*, 690 N.E.2d 285 (Ind. Ct. App. 1997) was the state with the largest number of insured sites). For purposes of a choice-of-law analysis under a uniform-contract-interpretation approach, these factors compel the Court to apply Indiana law to the entire contract, even though the claim giving rise to this action was made for damage occurring to Plaintiff's sole building in Georgia. *Id.* (citing *Summit*, 715 N.E.2d at 933 n.6) (holding that the location of the risk "must be determined at the time the contract is formed", rather than after the fact, in light of where damage actually occurred).

Based on the above analysis, the Court will apply Indiana law in ruling on Defendants' motions to dismiss.

**B. Legal Standard**

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of claims over which this Court has no subject-matter jurisdiction. In analyzing a motion to dismiss, the Court must accept as true all well-pled factual allegations and must draw all reasonable inferences in favor of the plaintiff. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999) (citing *Capital Leasing Co. v. Fed. Deposit Ins. Corp.*, 999 F.2d 188, 191 (7th Cir. 1993)); *Retired Chicago Police Assoc. v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996). However, the plaintiff bears the burden of establishing that subject-matter jurisdiction is proper. *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003); *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003). The Court may look beyond the pleadings and consider any evidence submitted to determine whether jurisdiction exists. *Long*, 182 F.3d at 554.

Likewise, Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal if the complaint fails to set forth a claim upon which relief can be granted. The complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the claim must notify the defendant of the allegations and the grounds upon which they rest. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court need not take unsupported legal conclusions contained in the complaint as true. *Iqbal*, 129 S. Ct. at 1940. On the contrary, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

**C. Standing**

The complaint alleges that Plaintiffs were injured by Continental's underpayment of GSMC's claim. Seeking recovery, Plaintiffs pursue seven separate claims against Continental. However, because Plaintiffs are not the real party in interest and have no standing to pursue their claims for breach of contract (Count I), promissory estoppel (Count II), bad faith claims handling (Count III), negligent claims handling (Count IV), and breach of fiduciary duties (Count VII), these claims must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

*1. Plaintiffs Are Not the Real Party In Interest and Lack Standing to Sue Directly*

Article III standing requires a plaintiff to establish: (1) an injury in fact (a "concrete and particularized" invasion of a "legally protected interest"); (2) causation (a "fairly traceable" connection between the alleged injury and the defendant's alleged conduct); and (3) redressability (the likelihood that the plaintiff's injury will be remedied by the relief plaintiff seeks). *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269 (2008) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)); *see also Bond v. Utreras*, 585 F.3d 1061, 1072 (7th Cir. 2009) (applying *Lujan*). Federal courts have no subject-matter jurisdiction over claims that lack standing–such claims are therefore subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1). *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003). Although standing does not depend on the merits of a plaintiff's contention, standing does turn on "the nature and source of the claim asserted." *Warth v. Seldin*, 422 U.S. 490, 500 (1975). To establish standing to sue, a plaintiff must "demonstrate a personal stake in the outcome of the lawsuit and must show that he or she has sustained or was in immediate danger of sustaining, some direct injury as a result of the conduct at issue." *Vectren Energy Mktg. & Serv., Inc. v. Exec. Risk Specialty Ins. Co.*, 875 N.E.2d 774, 777 (Ind. Ct. App. 2007) (holding that even

though subsidiary companies "have standing to sue [their insurer] for an alleged breach of the separate and distinct contractual duties owed to them as insureds, they do not have standing to sue [the insurer] for its alleged breach of duties owed to [their parent company]") (citing *Shourek v. Stirling*, 621 N.E.2d 1107, 1109 (Ind. 1993)).

Federal Rule of Civil Procedure 17(a)(1) provides another restriction on who may sue, directing that "[a]n action must be prosecuted in the name of the real party in interest." "The rule is similar to, though distinct from, the requirement that the plaintiff have standing to sue, in that both standing and real party in interest 'are used to designate a plaintiff who possesses a sufficient interest in the action to entitle him to be heard on the merits.'" *Weissman v. Weener*, 12 F.3d 84, 86 (7th Cir. 1993) (quoting 6A Charles Alan Miller et al., Federal Practice and Procedure § 1542 (2d ed. 1990)). Thus, "[c]ontractual rights must be enforced by the party suffering injury from the breach." *Cook v. City of Evansville*, 381 N.E.2d 493, 494 (Ind. Ct. App. 1978) ("Stated otherwise, the plaintiff must be entitled to the fruits of the action."). Accordingly, a party generally may only recover for an injury that it suffered directly, not for derivative harm resulting from injury to another. *See Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chicago*, 877 F.2d 1333, 1335 (7th Cir. 1989) ("When the injury is derivative, recovery by the indirectly injured person is a form of double counting."); *see also Massey v. Merrill Lynch & Co., Inc.*, 464 F.3d 642, 647 (7th Cir. 2006) (same); *Huffman v. Office of Env. Adjud.*, 811 N.E.2d 806, 814 (Ind. 2004) (same).

These rules perform an important function in the corporate context. "'Corporation' is but a collective noun for real people–investors, employees, suppliers with rights and others." *Mid-State*, 877 F.2d at 1335-36. Therefore,

when a corporation suffers injury, . . . it is the corporate entity–not the individual
shareholders–who retains the cause of action.  As a result, any claims that belong to
the corporation must be made derivatively (i.e., brought in the name and on behalf
of a corporation), and any resulting recovery flows to the corporate coffers.

*Massey*, 464 F.3d at 646 (citing *Scott v. Anderson Newspapers, Inc.*, 477 N.E.2d 553, 563 (Ind.

Ct. App. 1985)).

This requirement is especially important when the injured corporation is bankrupt.

"Recovery by the corporation ensures that all of the participants–stockholders, trade creditors,

employees, and others–recover according to their contractual and statutory priorities.  Direct

recovery outside of bankruptcy defeats those priorities."  *Kagan v. Edison Bros. Stores, Inc.*, 907

F.2d 690, 692 (7th Cir. 1990); see also *Weissman*, 12 F.3d at 87 (stating that this rationale

forbids direct recovery for derivative injury, including injury suffered by guarantors of bankrupt

companies' debt).  Courts have long prohibited shareholders and guarantors from recovering

directly and thereby diverting a bankrupt company's assets to their own pockets.  *Weissman*, 12

F.3d at 86-87 (citing *Mid-State*, 877 F.2d at 1336); *see also* 17 Couch on Ins. § 242:155 (2010)

("[A] medical malpractice plaintiff lacked standing to sue a bankrupt defendant's insurer for

bad-faith failure to settle where any recovery made against the insurer would be payable to the

defendant's bankruptcy estate, with plaintiff sharing only in funds as an unsecured creditor of the

estate.").

However, Indiana law does allow a corporate shareholder to bring a direct action "when

there is a breach of a duty owed specially to the stockholder separate and distinct from the duty

owed to the corporation."  *Sacks v. Am. Fletcher Nat'l Bank*, 279 N.E.2d 807, 811 (Ind. 1972)

(plaintiff gave personal guarantee for corporate loan, on which bank foreclosed); *see also*

*Buschmann v. Prof'l Men's Ass'n*, 405 F.2d 659, 663 (7th Cir. 1969) ("The defendant made

promises directly to Buschmann the breach of which gave rise to a cause of action."). However, as these cases make clear, the nature of the harm (i.e. whether it is direct or derivative) drives the analysis of whether a separate cause of action may be maintained.

The facts of this case establish conclusively that Plaintiffs' claims are derivative of GSMC's. Plaintiffs have made no claim under the insurance policy at issue. On the contrary, their complaint plainly states that they were injured as a result of Continental's failure to pay a claim made by GSMC. As Plaintiffs clarify, "this is not a claim that is being made for the explosion that occurred at the Georgia plant; instead, Plaintiffs have filed a Complaint involving the damages Plaintiffs have sustained as a result of Continental's failure to pay the claim made by [GSMC]." [DE 17 at 3]. Instead, as stated in the complaint, "[t]he Plaintiffs, who were dependent on GSMC, were significantly impacted and suffered damages" when "GSMC lost business and had to file for bankruptcy." [DE 1 at 22].

These statements establish that Plaintiffs' claims are derivative of those made by GSMC. Indeed, Plaintiffs' alleged injuries resulted from GSMC's lost business, not directly as a result of any conduct by Continental. [DE 1 at ¶ 22]; *see also Massey*, 464 F.3d at 648 (prohibiting suit because plaintiffs suffered "one of the types of harm that affect all shareholders"). Had Continental paid the disputed claim in full, the payment would have been made to the claimant, GSMC. That company then would have distributed the funds in accordance with bankruptcy regulations. In cases such as this, the aggrieved party is the party who filed a claim and did not receive sufficient payment. Indiana law does not permit Plaintiffs to recover directly for their indirect injury.

Nor do G&S Metal Trading, LLC's, G&S Holdings, LLC's, and Aluminum Sizing, Inc.'s

status as additional named insureds [DE 19-1 at 21] establish that Continental breached a distinct duty to these entities when it allegedly underpaid GSMC's claim. An insurance policy establishes an insurer's duty to pay an insured when the insured makes a valid claim. If the policy lists multiple insureds, multiple bilateral duties between insurer and insured exist at the same time. *See Vectren Energy*, 875 N.E.2d at 777-78 (holding that an insurance policy creates distinct contractual duties between the insurer and every named insured); *see also Wilcox v. Webster Ins., Inc.*, 982 A.2d 1053, 1063 (Conn. 2009) (finding that employees, as named insureds in employer's insurance policy, had standing to sue insurer that denied *their individual* claims for coverage). However, an insured has no standing to pursue a breach of contract claim based on contractual duties owed to a co-insured. *Vectren Energy*, 875 N.E.2d at 777-78. Although an insured may be collaterally injured by the underpayment of a co-insured's claim, any such injury is derivative, and therefore cannot support an independent cause of action. *Id.*

Here, Plaintiffs seek to recover for an injury resulting from the alleged breach of a duty (the duty to pay valid claims) owed to GSMC (the party making the claim). Indiana law does not recognize a duty owed to G&S Metal Trading, G&S Holdings, or Aluminum Sizing by Continental to pay claims made by GSMC. *See Vectren Energy*, 875 N.E.2d at 777-78. This rationale applies with greater strength to the Galleys, who are not named insureds under the policy. The complaint nowhere identifies the breach of a distinct, legally recognized duty owed by Continental to any Plaintiff. As a result, none of the Plaintiffs are the real party in interest, and none have standing to sue Continental directly for its alleged underpayment of GSMC's claim.

*2. Plaintiffs Lack Standing to Sue as Third-Party Beneficiaries of the Policy*

Plaintiffs similarly lack standing to sue as third-party beneficiaries. In Indiana, "only the parties to a contract, those in privity with the parties, and intended third-party beneficiaries under the contract may seek to enforce the contract." *Harold McComb & Son, Inc. v. JPMorgan Chase Bank, NA*, 892 N.E.2d 1255, 1258 (Ind. Ct. App. 2008) (citing *Gonzales v. Kil Nam Chun*, 465 N.E.2d 727, 729 (Ind. Ct. App. 2004)). A third-party beneficiary "may sue the insurer directly to enforce the contract between the insurer and the insured." *Kirundi v. Assurant Specialty Prop.*, No. 3:09-CV-467, 2010 WL 1710649, at *2 (N.D. Ind. Apr. 26, 2010) (quoting *Cain v. Griffin*, 849 N.E.2d 507, 514 (Ind. 2006)).

> In order to enforce a contract by virtue of being a third-party beneficiary, the third-party beneficiary must show: (1) A clear intent by the actual parties to the contract to benefit the third party; (2) A duty imposed on one of the contracting parties in favor of the third party; and (3) Performance of the contract terms is necessary to render the third party a direct benefit intended by the parties to the contract.

*Centennial Mortg., Inc. v. Blumenfeld*, 745 N.E.2d 268, 276 (Ind. Ct. App. 2001) (citing *NN Investors Life Ins. Co., Inc. v. Crossley*, 580 N.E.2d 307, 309 (Ind. Ct. App. 1991)). The contracting parties' intent to benefit the third party is the controlling factor in this analysis. *Barth Elec. Co. v. Traylor Bros., Inc.*, 553 N.E.2d 504, 506 (Ind. Ct. App. 1990) (citing *Garco Indus. Equip. Co. v. Mallory*, 485 N.E.2d 652, 654 (Ind. Ct. App. 1985)). "Such an intent may be demonstrated by specifically naming the third-party or by other evidence[,]" *id.*, but "must clearly appear from the terms of the contract itself." *St. Paul Fire & Marine Ins. Co. v. Pearson Const. Co.*, 547 N.E.2d 853, 856 (Ind. Ct. App. 1989) (quoting *Jackman Cigar Mfg. Co. v. John Berger & Son Co.*, 52 N.E.2d 363, 367 (Ind. Ct. App. 1944)); *accord Daimler Chrysler Corp. v. Franklin*, 814 N.E.2d 281, 286 (Ind. Ct. App. 2004) (dismissing claim because "the body of the contract and the arbitration agreement . . . does not reference [appellant] and does not show a

clear intent to benefit it").

The facts of this case establish that Plaintiffs are not third-party beneficiaries of GSMC's insurance policy. This is most obvious with regard to the Galleys. The Galleys are not parties to the policy, and the policy nowhere shows a clear intent to benefit them directly or a duty owed to them. *See Blumenfeld*, 745 N.E.2d at 276 (requiring intent); *St. Paul*, 547 N.E.2d at 856 (intent must be apparent from contract's terms). Simply put, the Galleys are strangers to the policy.

Plaintiffs G&S Metal Trading, LLC, G&S Holdings, LLC, and Aluminum Sizing, Inc. likewise lack standing, since their situation satisfies none of the three conditions necessary to establish standing to sue as a third-party beneficiary of the policy. *See Centennial Mortg.*, 745 N.E.2d at 276. First, based on the complaint and the four corners of the policy, the Court can infer no intent that Continental's coverage of *GSMC's* interest would confer a direct benefit on the additional named insureds, only on GSMC itself. As named insureds, these Plaintiffs were parties to the policy, and therefore may have rights to coverage for injury to their own interests or loss of their own business income. *See Centennial Mortg., Inc. v. Blumenfeld*, 745 N.E.2d 268, 275 (Ind. Ct. App. 2001) ("Generally, only those who are parties to a contract, or those in privity with a party, have the right to recover under the contract.") (citing *Gonzales v. Kil Nam Chun*, 465 N.E.2d 727, 729 (Ind. Ct. App. 1984)); *see also Rollins Burdick Hunter of Utah, Inc. v. Bd. of Trs. of Ball State Univ.*, 665 N.E.2d 914, 923 (Ind. Ct. App. 1996) (in another context, stating that a party named as an additional insured in an insurance policy was "a named insured"). However, this does not equate to coverage for injury to other parties' interests or loss

of other parties' business income.[4]  *See Minnesota Power & Light Co. v. Hockett*, 175 F.3d 1020, at *4 (7th Cir. 1999) (unpublished table opinion) (denying standing to a plaintiff explicitly named as a third-party beneficiary in a contract because the contract's derivative benefit to plaintiff was "too incidental and remote to be the basis of standing to sue as a third-party beneficiary").

Second, the policy did not impose any duty on any contracting party in favor of a third party.  The policy only establishes a duty to pay an insured for its own claim.  *See Vectren Energy*, 875 N.E.2d at 777-78 (denying standing to co-insured).

And third, an additional payment by Continental would not render Plaintiffs a direct benefit; it would render a direct benefit on GSMC–the party that made the claim.  *See Kirundi*, 2010 WL 1710649, at *3 (denying standing based partially on the fact that "the insurer paid the policy benefits to the insured", not to the third party); *NN Investors*, 580 N.E.2d at 309 (health care provider was not a third-party beneficiary of insurance contract between patient and insurer even though contract benefits would ultimately be paid to health care provider by assignment).

Because Plaintiffs are not the real party in interest and lack standing directly or as third-party beneficiaries for Continental's alleged underpayment to GSMC, Counts I, II, III, IV, and VII against Continental must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

## D. Tortious Interference with Contract

Plaintiffs' complaint fails to state a claim against Continental for tortious interference with contract.

---

[4] And even if it did, these Plaintiffs made no claim with Continental.  [DE 2 at 5 n.2]; *see also* [DE 19-1 at 30-31] (setting out a party's duties under the policy in the event of a loss).

> To state a claim for tortious interference with contract, a plaintiff must allege (1) the existence of a valid and enforceable contract, (2) the defendant's knowledge of the existence of the contract, (3) the defendant's intentional inducement of breach of the contract, (4) the absence of justification, and (5) damages resulting from the defendant's wrongful inducement of the breach.

*Morgan Asset Holding Corp. v. CoBank, ACB*, 736 N.E.2d 1268, 1272 (Ind. Ct. App. 2000)

(citing *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1235 (Ind. 1994)).

Plaintiffs' complaint fails to satisfy several of these criteria. First, the complaint fails to allege the existence of any specific contract between GSMC and any of the named Plaintiffs, or that any such contract was valid and enforceable. Instead, Plaintiffs only refer to "contractual obligations" and "disrupted contracts" between the parties. The Court is unable to infer the existence of a valid and enforceable contract from these vague references. *See Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009) (finding a complaint insufficient if it tenders "naked assertion[s]" devoid of "further factual enhancement") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

Second, Plaintiffs make no reference to Continental's knowledge of the existence of a contract; they allege only that Continental knew that Plaintiffs and GSMC were "affiliated". [DE 1 at ¶ 26]. Knowledge of business affiliation does not equate to knowledge of the existence of a specific contractual obligation. *See Iqbal*, 129 S. Ct. at 1949 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (internal citations omitted).

Third, Plaintiffs do not allege that Continental intentionally induced the breach of any such contract–only that its claimed failure to pay GSMC's claim in full resulted in the disruption of "contractual obligations".

And fourth, Plaintiffs do not assert that any such inducement was without justification. To satisfy this element, "the breach must be malicious and exclusively directed to the injury and damage of another." *Winkler*, 619 N.E.2d at 600-01 (upholding the trial court's grant of summary judgment because plaintiffs failed to allege the absence of justification). Here, Plaintiffs assert only that Continental's failure to pay GSMC's claim in full was in "bad faith." [DE 1 at ¶ 30]. Labels of this sort are insufficient to establish malice or thwart a motion to dismiss, because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'") (quoting *Twombly*, 550 U.S. at 557).

Because Plaintiffs' complaint fails to state a claim for tortious interference with contract against Continental, Count V must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

**E. Negligent Infliction of Emotional Distress**

Plaintiffs' claim against Continental for negligent infliction of emotional distress must also be dismissed for failure to state a claim.

In Indiana, a plaintiff seeking to recover for negligent infliction of emotional distress must satisfy the "modified impact rule" by establishing that he or she suffered a direct physical impact. *Atl. Coast Airlines v. Cook*, 857 N.E.2d 989, 996 (Ind. 2006); *see also Ross v. Cheema*, 716 N.E.2d 435, 437 (Ind. 1999) ("[T]he direct impact sustained by the plaintiff must necessarily be a 'physical' one."); *but see Atl. Coast*, 857 N.E.2d at 996 ("The impact however does not need to cause physical injury to the plaintiff.").

However, an exception to this requirement exists. The "bystander rule" permits a plaintiff to sue if he or she "actually witnessed or came on the scene soon after the death or severe injury of a loved one with a relationship to the plaintiff analogous to a spouse, parent, child, grandparent, grandchild, or sibling caused by the defendant's negligent or otherwise tortious conduct." *Groves v. Taylor*, 729 N.E.2d 569, 573 (Ind. 2000). "In sum, in order to recover damages for the negligent infliction [of] emotional distress, a plaintiff must satisfy either the modified impact rule or the bystander rule." *Atl. Coast*, 857 N.E.2d at 998; *accord Indiana Patient's Comp. Fund v. Winkle*, 863 N.E.2d 1 (Ind. Ct. App. 2007).

In this case, Plaintiffs' claims satisfy neither rule. Plaintiffs' complaint alleges no "direct physical impact" resulting from Continental's alleged "mishandling" of GSMC's claim; Plaintiffs only allege that GSMC was forced to file for bankruptcy as a result. Moreover, the mishandling of an insurance claim seems very unlikely to produce a sufficiently direct, physical impact under any set of circumstances. *See*, *e.g.*, *Atl. Coast*, 857 N.E.2d at 999 (concluding that smelling cigarette smoke and feeling floor vibrations "at the very least [] stretches the outer limits of the impact requirement"); *Powdertech, Inc. v. Joganic*, 776 N.E.2d 1251, 1263 (Ind. Ct. App. 2002) (finding that employee did not suffer a physical impact by being fired). Similarly, Plaintiffs cannot satisfy the requirements of the "bystander rule" because they nowhere allege that any Plaintiff witnessed the death or severe injury of a loved one, or that Continental's conduct caused any such death or severe injury.

Because Plaintiffs' complaint fails to state a claim against Continental for negligent infliction of emotional distress, Count VI must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

**F. Breach of Fiduciary Duties**

Because Plaintiffs fail to state a claim for breach of fiduciary duties against Hylant, that claim also must be dismissed.

The issue of whether a duty is owed to a plaintiff by a defendant is a question of law for the trial court. *DeHayes Group v. Pretzels, Inc.*, 786 N.E.2d 779, 782 (Ind. Ct. App. 2003) (citing *Peak v. Campbell*, 578 N.E.2d 360, 361 (Ind. 1991)). In Indiana, a claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary relationship; (2) a breach of the duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary. *Farmers Elevator Co. of Oakville, Inc. v. Hamilton*, 926 N.E.2d 68, 79 (Ind. Ct. App. 2010).

"An insurance agent who undertakes to procure insurance for another is an agent of the insured and owes the insured a general duty to exercise reasonable care, skill and good faith diligence in obtaining insurance." *Court View Ctr., L.L.C. v. Witt*, 753 N.E.2d 75, 87 (Ind. Ct. App. 2001) (quoting *Am. Family Mut. Ins. Co. v. Dye*, 634 N.E.2d 844, 847 (Ind. Ct. App. 1994)). If the agent fails to obtain insurance due to the agent's fault or neglect, the agent may be liable to the insured for any damages resulting therefrom. *Dreibelbiss Title Co., Inc. v. MorEquity, Inc.*, 861 N.E.2d 1218, 1222 (Ind. Ct. App. 2007); *Morgan v. Tackitt Ins. Agency, Inc.*, 852 N.E.2d 994, 999 (Ind. Ct. App. 2006) (citing *Anderson Mattress Co., Inc. v. First State Ins. Co.*, 617 N.E.2d 932, 939 (Ind. Ct. App. 1993)); *see also Brennan v. Hall*, 904 N.E.2d 383, 388-89 (Ind. Ct. App. 2009 (duty breached when insufficient coverage obtained because agent filled out application incorrectly).

"However, the agent's duty may extend to the provision of advice only upon a showing of an intimate long term relationship between the parties or some other special circumstance."

*Court View*, 753 N.E.2d at 87 (quoting *Am. Family*, 634 N.E.2d at 847); *see also Wyrick v. Hartfield*, 654 N.E.2d 913 (Ind. Ct. App. 1995) (same). Absent such a showing, the agent has no duty to advise. *See*, *e.g.*, *Myers v. Yoder*, 921 N.E.2d 880, 890 (Ind. Ct. App. 2010) (under a general duty of care, agent not required to advise insured regarding the sufficiency of coverage limits or the replacement value of insured's property); *DeHayes*, 786 N.E.2d at 783 (finding no duty to advise despite an eleven-year business relationship).

Additional factors demonstrating a special relationship include "(1) exercising broad discretion to service the insured's needs; (2) counseling the insured concerning specialized insurance coverage; (3) holding oneself out as a highly-skilled insurance expert, coupled with the insured's reliance upon the expertise; and (4) receiving compensation, above the customary premium paid, for the expert advice provided." *Court View*, 753 N.E.2d at 87 (quoting *Am. Family*, 634 N.E.2d at 848). When a special relationship has been established, an insurance broker's duty may extend to the provision of advice about appropriate coverage. *Id.* But first, "an insured must demonstrate some type of special relationship for a duty to advise to exist." *Filip v. Block*, 879 N.E.2d 1076, 1085-86 (Ind. 2008) (quoting *Craven v. State Farm Mut. Auto. Ins. Co.*, 588 N.E.2d 1294, 1297 n.5 (Ind. Ct. App. 1992)).

In this case, the complaint does not establish that Hylant had any special relationship with any Plaintiff or with GSMC. The complaint merely asserts that

> Plaintiffs relied upon Hylant Group, Inc. to address the complex needs of their related companies and to broker the contract with an insurance carrier that would take into account the critical dynamics within the industry. Plaintiffs then relied upon Hylant Group Inc.'s recommendation as to how to best position the companies for success in providing comprehensive insurance coverage for the benefit of the named insureds and Plaintiffs.

[DE 1 at ¶ 14]. The complaint does not claim any long-term or intimate relationship between the

23

parties, that Hylant exercised broad discretion, that Hylant held itself out as a highly skilled insurance expert, or that Hylant received higher-than-normal compensation for its services. Moreover, to the extent that the complaint alleges that Hylant did counsel Plaintiffs and that Plaintiffs relied on Hylant's recommendations, these allegations alone are insufficient to establish a plausible claim that a special relationship giving rise to a heightened duty existed. *See Iqbal*, 129 S. Ct. at 1950 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'") (quoting Fed. R. Civ. P. 8(a)(2)).  Plaintiffs bear the burden of establishing the existence of a special relationship, *see Filip*, 879 N.E.2d at 1085-86, and have failed to do so here.

However, even if a special relationship had existed, the insurance policy attached to the complaint indicates that Hylant did not breach its duty.  *See Sharp Elec. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 512-13 (7th Cir. 2009) (dismissing a claim for breach of fiduciary duty because "[a]t no point does Sharp explain how the alleged breach of fiduciary duty imposed (or could have imposed) a loss[.]").  The policy shows that Hylant did procure insurance and that Continental did issue a policy.  [DE 1 at 9-98; DE 19-1].  Plaintiffs' complaint states outright that the policy did provide coverage for the Manchester explosion, and that Continental made payments for the resulting property damage and business interruption loss.  [DE 1 at ¶ 29].

Furthermore, Plaintiffs do not allege that the policy coverage obtained by Hylant was insufficient to cover GSMC's loss.  Rather, "the only dispute is over how much should be paid [by Continental] on the claim."  [DE 17 at 5].  Specifically, Plaintiffs dispute the amount of business income and extra expense reimbursement due under the policy.  [DE 2 at ¶ 13].  But

submissions to the Court suggest that the policy coverage was facially sufficient to cover GSMC's loss. GSMC filed a claim for business interruption loss totaling $5,307,378. [DE 2-6 at ¶ 15; *see also* DE 17 at 5 (referencing this claim)]. The policy limit for business income and extra expense coverage for the Manchester facility was $6,000,000. [DE 1 at 26; *see also* DE 19-1 at 18 (same)]. Plaintiffs have thus "plead[ed themselves] out of court by attaching documents to the complaint that indicate that [they are] not entitled to judgment." *Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005).

Because Plaintiffs' complaint fails to state a claim against Hylant for breach of fiduciary duty, Count VII against Hylant must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).[5]

## G. Promissory Estoppel

Plaintiffs have also failed to state a claim against Hylant for promissory estoppel.

> The doctrine of promissory estoppel is applicable where there is: (1) a promise by the promisor; (2) made with the expectation that the promisee will rely thereon; (3) which induces reasonable reliance by the promisee; (4) of a definite and substantial nature; and (5) injustice can be avoided only by enforcement of the promise.

*Kacak v. Bank Calumet, N.A.*, 869 N.E.2d 1239, 1242 (Ind. Ct. App. 2007). The doctrine of promissory estoppel has been ruled applicable to commercial transactions in Indiana. *See Citizens State Bank v. Peoples Bank*, 475 N.E.2d 324, 327 (Ind. Ct. App. 1985).

Here, Plaintiffs' promissory estoppel claim against Hylant alleges: "It was represented to Plaintiffs by Hylant Group, Inc. that the coverage procured by Plaintiffs and G&S Metal

---

[5] *See also* 17 Couch on Ins. § 242:156 (2010) ("In an action for breach of the insurer's duty of good faith and fair dealing, a non-party to a contract who is nevertheless entitled to policy benefits, such as an 'insured' person under terms of policy or express beneficiary, has standing only if he or she is claimant whose benefits are wrongly withheld.").

Consultants, Inc. would provide coverage and protect Plaintiffs in the event of a loss such as the losses that occurred and are described herein."  [DE 1 at ¶ 24].  Plaintiffs then claim that they "did rely on the representations of the Defendants and were damaged as a result."  *Id.* at ¶ 27.

Plaintiffs' claim for promissory estoppel fails for several reasons.  First, the allegations in the complaint are precisely the type of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that "do not suffice" to thwart a motion to dismiss.  *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).  Second, Plaintiffs' complaint does not allege that any reliance on any promise by Hylant was reasonable, as is required to state a claim.  *See Kacak*, 869 N.E.2d at 1242.

Third, Plaintiffs' complaint seems to suggest that Hylant advised Plaintiffs on their needs for insurance coverage, and essentially promised Plaintiffs that the coverage provided would be sufficient to protect Plaintiffs in the event of a loss such as that allegedly caused by the Manchester explosion.  *See* [DE 1 at ¶¶ 14, 24].  Even if taken as true, this allegation does not satisfy the fifth element required to establish a claim for promissory estoppel–prejudice to a plaintiff.  Notably, Plaintiffs nowhere claim that the Continental insurance procured by Hylant was facially insufficient to protect their investment.  *See* Part III.F., *supra*.  Instead, Plaintiffs claim damages resulting from Continental's alleged failure to pay GSMC's claim in full.  Therefore, no alleged promise by Hylant to obtain sufficient coverage remains to be enforced.

Because Plaintiffs' complaint fails to state a claim for promissory estoppel against Hylant, Count II must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

### Conclusion

Based on the foregoing, Plaintiffs' Motion to Remand [DE 9] is DENIED.  Continental's

Motion to Dismiss [DE 11] and Hylant's Motion to Dismiss [DE 18] are hereby GRANTED.

The Clerk shall treat this action as DISMISSED ON THE MERITS AND WITH PREJUDICE.

SO ORDERED.

ENTERED:   March 8, 2011

_____/s/ JON E. DEGUILIO_____
Judge
United States District Court